GEORGE H. LEE CO. v. UNITED STATES.
No. 6052.

Circuit Court of Appeals, Ninth Circuit.
June 9, 1930.

Loeb, Walker & Loeb, of Los Angeles, Cal. (Gaines, McGilton, Van Orsdel &

Gaines, of Omaha, Neb., and Martin Gang, of Los Angeles, Cal., and Frank Gaines, of Omaha, Neb., of counsel), for appellant.

Samuel W. McNabb, U. S. Atty., and Harry Graham Balter, Asst. U. S. Atty., both of Los Angeles, Cal. (Elton L. Marshall, Solicitor, U. S. Dept. of Agriculture, and John F. Moore, Asst. to Solicitor, both of Washington, D. C., of counsel), for the United States.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge.

For more than twenty years the appellant, George H. Lee Company, has been and it now is engaged in the manufacture of a preparation known as Lee's Lice Killer, which it sells with the representation that it will destroy poultry lice. In 1926 and 1927 it shipped on consignment certain cans of the preparation from its principal place of business at Omaha, Neb., to the Germain Seed & Plant Company in Los Angeles, Cal. Upon the assumption that the cans were misbranded this suit was commenced, in September, 1927, for their forfeiture pursuant to the provisions of sections 8 and 10 of the Insecticide Act of 1910 (36 Stat. 333, 334, 7 USCA §§ 131, 133), and the cans were seized by the United States marshal. Responding to process, the appellant, as owner, appeared, and, after much delay, the reasons for which are not disclosed, issue was joined, on February 5, 1929, upon the filing by it of a supplemental and amended answer to an amended libel. In this pleading it admitted the shipment and all averments of the libel other than those charging that the brands or labels were false and misleading. Affirmatively it set up that the libelant was judicially estopped by reason of a similar proceeding culminating in a decree upon the merits in its favor in the United States District Court for the Western District of Missouri, on November 20, 1928; and thus is presented the controlling issue in the case. The facts are not in dispute, and may be stated substantially in the language of the findings, as follows:

On or about the 27th day of August, 1927, a libel was filed in the District Court of the United States in the Western District of Missouri by the United States against 63 quart cans, 41 half-gallon cans, and 15 gallon cans, more or less, of Lee's Lice Killer, wherein the charge was made that said Lee's Lice Killer, in the labeling thereof, was misbranded within the meaning of the Insecticide Act of 1910. The appellant herein entered an answer in response to the libel, and trial was had thereon to the merits in the month of November, 1928, resulting in a decree in favor of appellant herein. In that case, as here, appellant admitted the shipments and sales and labeling, and the only issue of fact joined therein was whether or not the preparation known as Lee's Lice Killer was misbranded. The labels on the cans in that case bore statements, designs, and devices in the same manner and form as those on the cans involved in this case, and the preparation or insecticide involved therein was manufactured from the same chemical formula as the preparation herein involved, and all cans containing Lee's Lice Killer, including the cans seized and involved in that action, contained said preparation known as Lee's Lice Killer, and said preparation of Lee's Lice Killer consists of substantially the same chemical constituents in the same proportion. In short, it is to be taken as true that the preparation and the branding thereof when put on the market are substantially identical in the two cases, and both shipments are upon the same footing in contemplation of law. In the former case decree was for the Lee Company, and here against it, upon the same issue. In both cases the parties were the same, in both cases there was a single issue, and in the former case that issue was decided upon the merits. In both cases in their representations both labels or brands were the same, and the preparations to which they related were identical in character, so that the only difference between the two suits is that they relate to two different shipments.

Even were it to be held that technical identity in cause of action fails because the two proceedings relate to two different lots of the same compound and to labels or brands physically different though in form and meaning the same, it still remains true that the only real issue decided in the former proceeding is the one real underlying issue in the instant proceeding, that is, the relation of a certain brand to a certain preparation, common to both suits. The case therefore is clearly within the narrowest application of the principle of judicial estoppel. In Mitchell v. First National Bank, 180 U. S. 471, 21 S. Ct. 418, 421, 45 L. Ed. 627, the Supreme Court said:

"We are of opinion that the bank was concluded by the judgment in the state court. In the recent case of Southern P. R. Co. v. United States, 168 U. S. 1, 48, 42 L. Ed. 355, 376, 18 S. Ct. 18, 27, we said, after an extended examination of the adjudged cases,

462

that 'a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of persons and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them.' "

Manifestly the purpose of this principle or rule would be frustrated if the view for which the government contends were to be sustained. If the government is not bound by an adverse judgment, neither is the appellant. Hence, without modifying its formula or changing its labels, it could, notwithstanding the decree herein, ship its preparation into other territory, and indeed into the same territory, with the hope of a more favorable result elsewhere or next time should the government bring other libels. And, instead of "peace and repose of society," the result would be chaos and endless turmoil. By appellee reliance is had on United States v. Stone & Downer Co., 274 U. S. 225, 47 S. Ct. 616, 71 L. Ed. 1013. But the court was there reviewing a judgment of the Court of Customs Appeals exercising jurisdiction in a special field of litigation quasi administrative, and it was accordingly held not only that the Customs Court was within the exercise of the power conferred upon it by Congress in declining, because of the distinctive character of the controversies coming before it, to recognize the rule of res adjudicata, but that such recognition would be unwise. We find little analogy between that case and this, and in it no warrant for extending, to a familiar class of litigation, a ruling limited in its reasoning to a new and distinctive field. Nor is it thought that anything we said in Aycock v. O'Brien (C. C. A.) 28 F.(2d) 817, lends support to appellee's contention.

Reversed.